UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

```
------------------------------ x
                               :
   UNITED STATES OF AMERICA,   :
                   Plaintiff,  :     Criminal No.
                               :     3:17-CR-00158 (RNC)
              vs.              :
                               :     July 20, 2017
   HOMERO JOSHUA GARZA,        :
                   Defendant.  :
                               :
------------------------------ x
```

Federal Building
450 Main Street
Hartford, Connecticut


CHANGE OF PLEA HEARING


(Transcription from Electronic Recording)


Held Before:

THE HON. DONNA F. MARTINEZ
United States Magistrate Judge

Transcription Services of
FALZARANO COURT REPORTERS, LLC
4 Somerset Lane
Simsbury, CT  06070
860.651.0258
www.falzaranocourtreporters.com

A P P E A R A N C E S:

    For the Plaintiff:

        OFFICE OF THE UNITED STATES ATTORNEY
        157 Church Street - 25rd Floor
        New Haven, Connecticut  06510
        203-821-3735
        john.pierpont@usdoj.gov
            BY:  JOHN TROWBRIDGE PIERPONT, ESQ.
                Assistant U.S. Attorney


    For the Defendant:

        BALLARD SPAHR, LLP
        919 Third Avenue
        New York, New York 10022
        212-223-0200
        peercem@ballardspahr.com
            BY:  MARJORIE J. PEERCE, ESQ.

1           (Proceedings commenced at 11:04 a.m.)

2

3           THE COURT:  All right.  Good morning.

4           MR. PIERPONT:  Good morning, your

5       Honor.

6           THE COURT:  This is United States vs.

7       Garza, G-A-R-Z-A, 17-Criminal-158 assigned

8       to Judge Chatigny.

9           Will you identify yourselves, please,

10      for the record?

11          MR. PIERPONT:  Assistant U.S. Attorney

12      John Pierpont for the United States.

13      Joining me at counsel table is Special Agent

14      Mark Munster from the FBI.  Good morning,

15      your Honor.

16          THE COURT:  Good morning.

17          MS. PEERCE:  Good morning, your Honor.

18      Marjorie Peerce from Ballard Spahr in New

19      York City.

20          THE COURT:  Good morning.

21          All right.  I understand that Mr. Garza

22      wants to waive indictment and plead guilty

23      to a one count information charging him with

24      wire fraud in violation of 18 United States

25      Code Section 1343.  Is that correct?

1          MR. PIERPONT:  That's correct, your

2     Honor.

3          THE COURT:  All right.

4          MS. PEERCE:  That's correct.

5          THE COURT:  Mr. Garza, will you stand?

6          Mr. Garza, the first matter to be taken

7     up this morning before we proceed to your

8     waiver of indictment and your guilty plea is

9     the matter of the referral of this case to

10    me and your consent to the referral.

11         There are two kinds of judges in the

12    federal system, magistrate judges and

13    district judges.  The two have different

14    kinds of authority.  I'm a magistrate judge.

15    Without the referral of a district judge and

16    the defendant's consent, as a magistrate

17    judge I could not handle a proceeding such

18    as this, a change of plea in a criminal case

19    in which a felony is to be charged.  The

20    proceeding would be handled by a district

21    judge.

22         The district judge to whom your case is

23    assigned has referred your case to me to

24    handle this proceeding and to make a

25    recommendation to him as to whether he

1         should accept your guilty plea.  The

2         referral is only for the sake of

3         convenience.  There is no other reason.

4         After this your case will go back to the

5         district judge for all remaining

6         proceedings.

7             I cannot take your guilty plea unless

8         you consent to my doing so.  You may consent

9         to have this proceeding before me or you may

10        have this proceeding before a district

11        judge.  Have you discussed with your lawyer

12        your consent to having this proceeding

13        before me?

14             THE DEFENDANT:  Yes, your Honor.

15             THE COURT:  Do you want to have the

16        proceeding before me or would you prefer to

17        have it before a district judge?

18             THE DEFENDANT:  Before you.

19             THE COURT:  Does the Government

20        consent?

21             MR. PIERPONT:  The Government does,

22        your Honor.

23             THE COURT:  Do you have a written

24        consent form, Counsel?

25             MS. PEERCE:  We do, your Honor.

1          THE COURT:  All right.  If you want to

2      have this proceeding before me, Mr. Garza,

3      you may sign the consent form.  If you want

4      to have it before me you should not sign the

5      consent form.  If you want to discuss it

6      further with counsel you may do that.

7          Defendant is signing the consent form.

8          I find he understands he has a right to

9      have this proceeding before a district judge

10      and has knowingly and voluntarily waived

11      that right and consented to proceed before a

12      magistrate judge.

13          Mr. Garza, before I can -- do you have

14      the consent form?

15          MR. PIERPONT:  May I approach, your

16      Honor?

17          THE COURT:  Yes, please.

18          (Pause.)

19          THE COURT:  Mr. Garza, before I can

20      take your guilty plea there are a number of

21      questions that I must ask you while you're

22      under oath.  The purpose of the questions is

23      to make sure that you know what you're

24      doing, that you understand your rights, that

25      you understand the consequences of a guilty

1   plea, and that you want to plead guilty

2   because you are guilty.

3     If you don't understand any of my

4   questions please do not hesitate to say so

5   and I'll reword the question.  All right?

6     THE DEFENDANT:  Yes, your Honor.

7     THE COURT:  Also, at any time during

8   the proceedings if you want to talk to

9   counsel all you have to do is indicate that

10   to me and you may have as long as you want

11   to talk to your lawyer.  Do you understand?

12     THE DEFENDANT:  Yes, your Honor.

13     THE COURT:  All right.

14     Place the Defendant under oath.

15     COURTROOM DEPUTY:  Yes, your Honor.

16     Please raise your right hand.

17

18     HOMERO JOSHUA GANZA, the Defendant

19   herein, was duly sworn by the Courtroom

20   Deputy.

21

22     THE COURT:  You have now sworn to tell

23   the truth.  If you answer any of my

24   questions falsely you will be subject to the

25   penalties for perjury or for making a false

1    statement.  Do you understand?

2         THE DEFENDANT:  Yes, your Honor.

3         THE COURT:  What's your full name?

4         THE DEFENDANT:  Homero Joshua Garza.

5         THE COURT:  Have you ever used any

6    other names?

7         THE DEFENDANT:  Usually it's Josh

8    Garza.

9         THE COURT:  Where were you born?

10        THE DEFENDANT:  In Galveston, Texas.

11        THE COURT:  I understand that you're a

12   United States citizen, but I'm obligated to

13   tell you the following.

14        If you were not a United States citizen

15   your conviction of this offense could result

16   in your deportation, your exclusion from the

17   United States or the denial of citizenship

18   under our immigration laws.  Do you

19   understand?

20        THE DEFENDANT:  Yes, your Honor.

21        THE COURT:  How old are you?

22        THE DEFENDANT:  32, your Honor.

23        THE COURT:  What schooling or education

24   have you had?

25        THE DEFENDANT:  After high school, your

1        Honor.

2              THE COURT:  You're a high school

3        graduate?

4              THE DEFENDANT:  Yes, your Honor.

5              THE COURT:  Are you presently under the

6        influence of alcohol or any drugs or

7        medicine?

8              MS. PEERCE:  Your Honor, if Mr. Garza

9        can answer that question just yes or no, but

10       if your Honor wishes to know the medications

11       we can --

12             THE COURT:  I am going to ask him

13       follow-up questions.

14             MR. PEERCE:  Your Honor, if it's

15       possible not to put medications on the

16       record (unintelligible).

17             THE COURT:  Well, that's something I

18       need to know.  If you want to come up to

19       sidebar you may, but I am going to inquire

20       on the record.

21             THE DEFENDANT:  Yes, your Honor.

22             THE COURT:  You've taken drugs or

23       medicine?

24             THE DEFENDANT:  Medicine, your Honor.

25             THE COURT:  All right.

1          Would the Defendant please --

2          (At sidebar:)

3          MS. PEERCE:  The reason why I'm

4     requesting this is this is a very -- there's

5     a lot of press about this case.  There are a

6     lot of blogs, there's a lot of threatening

7     things that have been said about Mr. Garza

8     and his wife including as recently as this

9     morning, some things that were threatening.

10    So I would prefer if possible that his

11    medications not be on the public record.

12    I'd be glad we have this petition that Mr.

13    Garza did fill out that lists them.  So I

14    would just -- that's my request if your

15    Honor wishes it be in open court, that's

16    fine.

17         THE COURT:  How would his drugs or

18    medicine impact his safety?

19         MS. PEERCE:  These people say some

20    pretty outrageous things and I'm just trying

21    to avoid it.  But if it's on the record,

22    it's on the record.  It just --

23         THE COURT:  Well --

24         MS. PEERCE:  As recently as this

25    morning they said they wanted to rape his

1           wife while he was in prison.

2                THE COURT:  Uh-huh.

3                MS. PEERCE:  They're a little but out

4           there.

5                THE COURT:  These are victims of the

6           offense?

7                MS. PEERCE:  Yes.  Yes.

8                THE COURT:  And once again, how would

9           the fact that he is on some sort of

10          medication affect all this?

11               MS. PEERCE:  Only the way it -- only

12          the things they will say.  It's just -- it's

13          just I'm trying to give them less fodder,

14          but if your Honor wants them on the record

15          we'll put them on the record.

16               THE COURT:  Well, I'll say this.  I

17          understand what you're saying.  I understand

18          of course that everyone has an interest in

19          protecting the Defendant's health and

20          safety.  I'm just not persuaded that the

21          medication that he's taking would have any

22          impact and that if we want to make a record,

23          I'm not telling you not to, I just think

24          that what you're talking about is

25          embarrassment, humiliation, that kind of

1          thing and that's not a reason to seek --

2              MS. PEERCE:  And ordinarily as I

3          understand under ECF rules any sort of

4          health information does not get disclosed on

5          the public docket, and so I was kind of

6          doing this consistent with ECF's rules that

7          that's -- that is where I'm coming from.

8              THE COURT:  All right.

9              MR. PEERCE:  And we do have a cadre of

10         people out there that will do anything they

11         possibly can to embarrass and I just -- I'm

12         trying to avoid that.

13             THE COURT:  All right.  I am persuaded

14         by that.  I'm going to ask the Defendant now

15         what medications he's taken within the past

16         72 hours.  His response to that question is

17         sealed and shall remain sealed pending

18         further order of the court.

19             (Portion of hearing sealed per order of

20         the Court.)

21             (End of sidebar.)

22             THE COURT:  All right.  I understand,

23         Mr. Garza, that you have taken certain

24         medications recently.  Do those medications

25         affect your ability to think clearly?

1           THE DEFENDANT:  No, your Honor.

2           THE COURT:  Do they leave you fuzzy-

3       headed, dizzy, any negative effects at all?

4           THE DEFENDANT:  No, your Honor.

5           THE COURT:  Are you now or have you

6       recently been treated for substance abuse?

7           THE DEFENDANT:  No, your Honor.

8           THE COURT:  How do you feel today?

9       That is how is your health today?

10          THE DEFENDANT:  I'm good, your Honor.

11          THE COURT:  All right.  I'm going to

12      ask you to speak up because there's a record

13      of everything that goes on in the courtroom

14      and it's important that everybody be heard.

15      All right?

16          THE DEFENDANT:  Yes, your Honor.

17          THE COURT:  What do you mean, pretty

18      good?

19          THE DEFENDANT:  I feel good.

20          THE COURT:  Is your mind clear?

21          THE DEFENDANT:  Yes, your Honor.

22          THE COURT:  Are you able to understand

23      everything that's going on here?

24          THE DEFENDANT:  Yes, your Honor.

25          THE COURT:  Counsel, have you had any

```
 1              difficulty communicating with your client?
 2                   MS. PEERCE:  No, your Honor.
 3                   THE COURT:  Do you have any doubts at
 4              all as to his competence to proceed?
 5                   MS. PEERCE:  I do not.
 6                   THE COURT:  Mr. Garza, are you
 7              satisfied with the services of your lawyer?
 8                   THE DEFENDANT:  Yes, your Honor.
 9                   THE COURT:  Have you received a copy of
10              the written charge that the Government
11              proposes to file against you in this case,
12              the information?
13                   THE DEFENDANT:  Yes, your Honor.
14                   THE COURT:  Do you understand the
15              charge?
16                   THE DEFENDANT:  Yes, your Honor.
17                   THE COURT:  Have you discussed it fully
18              with your lawyer?
19                   THE DEFENDANT:  Yes, your Honor.
20                   MS. PEERCE:  Your Honor, we waive the
21              public reading.
22                   THE COURT:  I beg your pardon?
23                   MS. PEERCE:  With the Court's consent
24              we waive its public reading.
25                   THE COURT:  All right.  We'll get to
```

1          that in just a moment.

2                Mr. Garza, the charge to which I'm told

3          you want to plead guilty is contained in an

4          information which alleges a violation of 18

5          United States Code Section 1343, wire fraud.

6          Do you understand that this charge is a

7          felony, that it is a crime punishable by

8          more than one year in jail?

9                THE DEFENDANT:  Yes, your Honor.

10               THE COURT:  I understand that you want

11         to waive indictment and plead guilty to the

12         felony charge in the information; is that

13         correct?

14               THE DEFENDANT:  Yes, your Honor.

15               THE COURT:  Before you may waive

16         indictment I have to make certain that you

17         understand your right to have your case

18         presented to a grand jury.

19               Under the Constitution of the United

20         States the Government cannot prosecute

21         someone for a felony unless it first obtains

22         an indictment from a federal grand jury.  A

23         grand jury is a group of citizens who are

24         called in to hear the Government's evidence.

25         The grand jury is composed of at least 16

1       but not more than 23 people.  Before you

2       could be indicted at least 12 of the grand

3       jurors would have to find that there is

4       probable cause to believe that a crime was

5       committed and that you committed it.

6            I am told that you want to waive or

7       give up the right to have your case

8       presented to the grand jury.  If you do that

9       you are waiving your right to require that

10      the Government present its case to a grand

11      jury and you're therefore giving up the

12      possibility that the grand jury might refuse

13      to indict you.  Do you understand all that?

14           THE DEFENDANT:  Yes, your Honor.

15           THE COURT:  If you do not waive

16      indictment the Government may present your

17      case to the grand jury and ask the grand

18      jury to indict you.  The grand jury might

19      indict you or the grand jury might not

20      indict you, but if you waive your right to

21      indictment the felony charges against you

22      will be brought by the United States

23      Attorney by the filing the information which

24      your lawyer has shown you.  The case will

25      proceed against you on the United States

1    Attorney's information just as though you

2    had been indicted.

3        Have you discussed waiving your right

4    to indictment by the grand jury with your

5    lawyer?

6        THE DEFENDANT:  Yes, your Honor.

7        THE COURT:  Do you understand your

8    right to indictment by a grand jury?

9        THE DEFENDANT:  Yes, your Honor.

10       THE COURT:  Have any threats or

11   promises been made to induce you to waive

12   indictment?

13       THE DEFENDANT:  No, your Honor.

14       THE COURT:  Is anyone forcing you to

15   waive indictment?

16       THE DEFENDANT:  No, your Honor.

17       THE COURT:  Do you want to waive your

18   right to indictment by a grand jury?

19       THE DEFENDANT:  Yes, your Honor.

20       THE COURT:  Counsel, is there any

21   reason your client should not waive

22   indictment?

23       MR. PEERCE:  No, your Honor.

24       THE COURT:  Does the Government know of

25   any reason?

 1          MR. PIERPONT:  No reason that the

 2     Government is aware of, your Honor.

 3          THE COURT:  Has the Government prepared

 4     the necessary waiver form?

 5          MR. PIERPONT:  Yes, your Honor.

 6          THE COURT:  Defendant and his counsel

 7     may now sign the waiver form in open court.

 8          Defendant and counsel are signing the

 9     waiver form.  I find the Defendant's waiver

10     is knowingly, intelligently and voluntarily

11     made and I accept it.  The waiver form may

12     be filed and the information may be filed as

13     well.

14          MR. PIERPONT:  May I approach, your

15     Honor?

16          THE COURT:  Yes, please.

17          (Pause.)

18          THE COURT:  I'm going to ask the

19     Defendant to re-sign the waiver form not so

20     quickly in a way that is legible so any

21     stranger could see that you are signing it.

22     And I'm going to ask you other times during

23     the course of the proceeding to do that as

24     well.  Just sign it right next to above

25     where you signed it.

1          Defendant has signed the waiver form

2     again.

3          MS. PEERCE:  Yes, your Honor.

4          THE DEFENDANT:  Yes, your Honor.

5          THE COURT:  The waiver form may be

6     filed.  I have signed it.

7          Mr. Garza, the first and the most

8     important thing that you must understand is

9     that you have a right to plead not guilty

10    and to persist in that plea of not guilty

11    even if you are guilty.  If you plead not

12    guilty and continue in that plea of not

13    guilty you'll be entitled to a trial by a

14    jury with the assistance of a lawyer at the

15    trial and at every other stage of the case.

16    If you cannot afford a lawyer the court will

17    appoint a lawyer for you at no cost to you.

18    Do you understand?

19         THE DEFENDANT:  Yes, your Honor.

20         THE COURT:  If you were to go to trial

21    you would be presumed innocent and the

22    Government would have to prove your guilt

23    beyond a reasonable doubt.  If the

24    Government were to fail, the jury would have

25    to find you not guilty.  Do you understand?

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  In the course of the trial

3     any witnesses for the Government would have

4     to come to court and testify in your

5     presence.  Your lawyer would have the right

6     to cross examine any witnesses for the

7     Government and to object to any evidence

8     offered by the Government.  Do you

9     understand that?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  At a trial you would have

12     the right to testify if you chose to

13     testify, but you could not be required to

14     testify.  If you decided not to testify, the

15     jury would be instructed that they could not

16     hold that against you.  Do you understand?

17          THE DEFENDANT:  Yes, your Honor.

18          THE COURT:  If the case were tried you

19     would have the right to present evidence in

20     your defense and to require the attendance

21     of witnesses to testify in your defense.

22     However, you would not be required to

23     present any evidence or call any witnesses.

24     If you chose not to present any evidence or

25     call any witnesses, the jury would be

1    instructed that they could not hold that

2    against you.  Do you understand?

3         THE DEFENDANT:  Yes, your Honor.

4         THE COURT:  If you plead guilty you'll

5    be giving up your right to remain silent and

6    not incriminate yourself regarding the

7    conduct involved in the plea.  If you decide

8    to plead guilty, I'll have to ask you

9    questions about what you did to satisfy

10   myself that you are guilty, and you'll have

11   to answer my questions and acknowledge your

12   guilt.  Do you understand?

13        THE DEFENDANT:  Yes, your Honor.

14        THE COURT:  When you do that you will

15   be waiving your privilege against self-

16   incrimination.  Do you understand what I

17   mean?

18        THE DEFENDANT:  Yes, your Honor.

19        THE COURT:  If you plead guilty and

20   your plea of guilty is accepted by the

21   district judge, you'll be giving up your

22   Constitutional right to a jury trial and all

23   the other rights I've just discussed.  There

24   will be no trial of any kind.  You'll be

25   found guilty on the basis of your guilty

1        plea.  Do you understand?

2               THE DEFENDANT:  Yes, your Honor.

3               THE COURT:  Are you willing to give up

4        your right to a trial and all the other

5        rights I've just discussed?

6               THE DEFENDANT:  Yes, your Honor.

7               THE COURT:  Is there a written plea

8        agreement?

9               MR. PIERPONT:  There is, your Honor.

10              THE COURT:  Have you read this

11       agreement, Mr. Garza?

12              THE DEFENDANT:  Yes, your Honor.

13              THE COURT:  Do you understand it?

14              THE DEFENDANT:  Yes, your Honor.

15              THE COURT:  Have you discussed it with

16       counsel?

17              THE DEFENDANT:  Yes, your Honor.

18              THE COURT:  Do you want to sign it?

19              THE DEFENDANT:  Yes, your Honor.

20              THE COURT:  All right.  You may be

21       seated and sign the agreement.

22              (Pause.)

23              MS. PEERCE:  Your Honor, would you like

24       me to execute it as well at this time?

25              THE COURT:  Yes, please.  Thank you.

1          MR. PIERPONT:  And your Honor, the

2     factual stipulation as well at this time?

3          THE COURT:  There's a stipulation

4     attached and that may be signed at this

5     point as well.

6          (Pause.)

7          THE COURT:  All right.  Defendant and

8     counsel have signed the plea agreement and

9     the attached stipulation.

10          I'm going to ask the Government to

11     summarize the terms of the plea agreement.

12          MR. PIERPONT:  Thank you, your Honor.

13          The plea agreement is an 11-page letter

14     dated today, July 20th, 2017, addressed to

15     Defense counsel, Ms. Margie Peerce.  The

16     letter is the agreement between the parties.

17     It begins with the plea and the offense.  It

18     states explicitly that Defendant agrees to

19     waive his right to be indicted and to plead

20     guilty to a one count information charging

21     him with wire fraud, a violation of 18

22     United States Code Section 1343.

23          It lays out the elements of wire fraud

24     and those are, first, that there was a

25     scheme or artifice to defraud or to obtain

money or property by materially false and
fraudulent pretenses, representations or
promises.

Second, that the Defendant knowingly
and willfully participated in the scheme or
artifice to defraud with knowledge of its
fraudulent nature and the specific intent to
defraud.

And third, that in execution of the
scheme the Defendant used or caused use of
the interstate wires.

Page 2 lists out the penalties, your
Honor, that this statute carries.  It
carries a maximum penalty of 20 years
imprisonment, a $250,000 fine, or also it
states that there's an alternative fine
provision of 18 United States Code Section
3571, and under that the fine could actually
be twice the gross gain to the Defendant or
twice the gross loss resulting from the
offense, or the $250,000 that I had
mentioned previously.

Additionally, the Court may impose a
term of supervised release of up to 3 years
to begin after imprisonment, and it also

1       makes mention of a $100 special assessment.

2               There's a section about restitution

3       here as well, your Honor.  Restitution is

4       mandatory in this case and regardless of the

5       restitution that is ordered by the Court,

6       the Defendant in this agreement agrees to

7       make restitution in the amount of

8       $9,182,000, and the Defendant agrees to make

9       that restitution as ordered by a court.

10              There's a section about the collection

11      of financial obligations that the Defendant

12      agrees to provide to our office.

13              Page 3 to page 5 talks about the

14      sentencing guidelines as well.  There is a

15      bit about the acceptance of responsibility

16      here which is that provided that the

17      Defendant continues to accept responsibility

18      the Government would agree that his offense

19      level -- will ask the Court to reduce his

20      total offense level by 3 points.

21              There is a stipulation that is

22      referenced here of facts that could rise his

23      guilty plea, and with respect to the

24      guideline stipulation the parties agree as

25      follows.

1           And that is first, that the Defendant's
2       base offense level is 7.  That level is then
3       increased by 18 levels because the agreed
4       upon loss is more than 3 and a half million
5       but less than 9 and a half million.  That
6       level is further increased by 2 levels
7       because the offense involved 10 or more
8       victims, and it is further increased by 2
9       levels because the Defendant was an
10      organizer, leader, manager or supervisor.
11      3 levels, again assuming the Court agrees,
12      will be subtracted for acceptance of
13      responsibility.  The total offense level
14      would therefore be 26.
15          The parties agree at this point that
16      Mr. Garza's criminal history category would
17      be 1.  A total offense level of 26, assuming
18      a criminal history category of 1 would
19      result in a sentencing range of 63 to 79
20      months imprisonment, a fine range of 25,000
21      to $250,000, and the Defendant is also
22      subject to a supervised release term of 1 to
23      3 years.  The parties reserve the right to
24      seek a departure, a non-guideline sentence.
25          Page 5 also talks about the waiver of

1          the right to appeal or collaterally attack

2          this conviction and sentence.  And so the

3          Defendant in this agreement agrees not to

4          appeal or collaterally attack his conviction

5          in any proceeding, including but not limited

6          to a motion under 28 USC 2255.  Nor will the

7          Defendant pursue an appeal or collaterally

8          attack his sentence that will eventually be

9          imposed if that sentence does not exceed 78

10         months in prison and a 3-year term of

11         supervised release, $100 special assessment,

12         a restitution order of the $9,182,000 and a

13         20 million dollar fine even if the Court

14         gets to the sentence in a different way than

15         is contemplated by this agreement.

16              The Government agrees to provide

17         information to the Court with respect to an

18         appropriate sentence.  5 to 6 talks about

19         the waiver of various rights that your Honor

20         has gone over some of these that includes

21         the waiver of the right to indictment,

22         waiver of trial rights and the waiver of

23         statute of limitations.

24              There is also a section on the

25         acknowledgment of guilt and the

1    voluntariness of the plea.  There's a

2    section about the scope of the agreement;

3    there's a section about collateral

4    consequences and the satisfaction of federal

5    criminal liability arising from the scheme

6    to which the Defendant will be pleading

7    guilty.

8        And then, your Honor, there is page 8

9    which is the signature page as well and

10   talks about other promises too.

11       THE COURT:  All right.

12       There's a section in the plea agreement

13   on page 5, about a third of the way down, in

14   which the Defendant waives his right to

15   appeal or collaterally attack his conviction

16   and sentence.

17       Mr. Garza, the rules require me to

18   address you about that provision separately

19   and make a determination as to whether you

20   understand it.  So I'm going to begin by

21   doing that.  After that I'm going to ask you

22   questions about your entire agreement with

23   the Government, but right now as I said I'm

24   focusing on the section on page 5 entitled

25   Waiver of Right to Appeal or Collaterally

1          Attack Conviction and Sentence.  You see it?

2                    THE DEFENDANT:  Yes, your Honor.

3                    THE COURT:  Have you read it?

4                    THE DEFENDANT:  Yes, your Honor.

5                    THE COURT:  Have you been over it with

6          your lawyer?

7                    THE DEFENDANT:  Yes, your Honor.

8                    THE COURT:  Has she answered any

9          questions you might have had to your

10         satisfaction?

11                   THE DEFENDANT:  Yes, your Honor.

12                   THE COURT:  As I said, I have to make

13         sure that you understand it.

14                   Under certain circumstances a Defendant

15         might be able to legally challenge his

16         conviction and his sentence.  Defendant

17         might be able to appeal his case to a higher

18         court.  He might also be able to

19         collaterally attack his conviction or his

20         sentence.  A collateral attack is usually

21         called a habeas.  It's a separate lawsuit in

22         which the Defendant makes a claim or

23         argument that there's something legally

24         wrong with the conviction or the sentence

25         and asks the Court to set it aside.  Do you

1    understand me so far?

2         THE DEFENDANT:  Yes, your Honor.

3         THE COURT:  In your plea agreement as

4    part of your plea deal with the Government

5    you've given up some of those rights, and

6    I'm going to explain it now.

7         You've agreed that you will not appeal

8    or collaterally attack your conviction at

9    all, period, in any proceeding.  Do you

10   understand that?

11        THE DEFENDANT:  Yes, your Honor.

12        THE COURT:  You've agreed that you will

13   not challenge your sentence either in an

14   appeal or collaterally attack as long as

15   your sentence isn't more than 78 months in

16   jail, 3 years of supervised release, a $100

17   special assessment, a restitution order of

18   $9,182,000, and a $20,000 fine.

19        MS. PEERCE:  20 million I believe, your

20   Honor.

21        THE COURT:  Excuse me, 20 million

22   dollar fine regardless of how or why the

23   judge figures out that that should be your

24   sentence.  Do you understand?

25        THE DEFENDANT:  Yes, your Honor.

```
1              THE COURT:  This waiver applies
2         regardless of whether your term of
3         imprisonment is imposed to run consecutively
4         to or concurrently with any other sentence
5         that might have been imposed upon you.  Do
6         you understand?
7              THE DEFENDANT:  Yes, your Honor.
8              THE COURT:  I'm now going to ask you
9         questions about your entire agreement with
10        the Government.
11             Does the written agreement which has
12        just been summarized by the Assistant United
13        States Attorney, fully and accurately
14        reflect your entire understanding of the
15        agreement you've entered into with the
16        United States Government?
17             THE DEFENDANT:  Yes, your Honor.
18             THE COURT:  Other than the promises
19        contained in the written agreement, has
20        anyone made any promises to you that have
21        caused you to want to plead guilty?
22             THE DEFENDANT:  No, your Honor.
23             THE COURT:  Has anybody made any
24        promises to you as to what your sentence
25        will be?
```

1           THE DEFENDANT:  No, your Honor.

2           THE COURT:  Has anyone threatened you

3       in any way in an attempt to get you to plead

4       guilty?

5           THE DEFENDANT:  No, your Honor.

6           THE COURT:  Has anybody attempted to

7       coerce you or intimidate you into pleading

8       guilty?

9           THE DEFENDANT:  No, your Honor.

10          THE COURT:  Is anybody forcing you to

11      plead guilty?

12          THE DEFENDANT:  No, your Honor.

13          THE COURT:  Do you want to plead guilty

14      because you choose to plead guilty

15      voluntarily of your own free will?

16          THE DEFENDANT:  Yes, your Honor.

17          THE COURT:  Plea agreement now may be

18      filed.

19          MR. PIERPONT:  May I approach, your

20      Honor?

21          THE COURT:  Yes, please.

22          (Pause.)

23          THE COURT:  I'm now going to address

24      you about the sentence the Court may impose

25      if you go ahead and plead guilty.

```
1              If you plead guilty the judge could

2         send you to jail for as long as 20 years.

3         Do you understand that?

4              THE DEFENDANT:  Yes, your Honor.

5              THE COURT:  There's a term of

6         supervised release for not more than 3 years

7         which begins at the end of any period of

8         imprisonment.  If you're placed on

9         supervised release, which is a form of Court

10        supervision, you will be required to satisfy

11        certain conditions while on supervised

12        release including that you not commit any

13        crime.

14             If you were to violate any condition of

15        your supervised release, you could be

16        required to serve a further term of

17        imprisonment of up to two years with no

18        credit for time you already spent on

19        supervised release.

20             You can be fined as much as $250,000.

21        You are also subject to an alternative fine

22        provision.  Under this section the maximum

23        fine that may be imposed upon you is the

24        greatest of the following.  $250,000, twice

25        the gross gain to you resulting from the
```

```
 1        offense, or twice the gross loss to victims

 2        resulting from the offense.

 3             You can also be required to pay the

 4        costs to the United States Government of any

 5        imprisonment, probation or period of

 6        supervised release.  If a sentence of

 7        imprisonment is imposed the rate is

 8        $2,036.92 a month.  If a sentence of

 9        probation or supervised release is imposed

10        the rate is $294.60 a month.  If a fine of

11        more than $2,500 is imposed, you can be

12        required to pay interest on any fine amount

13        that is not paid within 15 days of the date

14        you're sentenced.  You'll be required to pay

15        a mandatory special assessment of $100.

16             Is forfeiture an issue, Counsel?

17             MR. PIERPONT:  No, your Honor.

18             THE COURT:  You also may be required to

19        pay restitution.  Regardless of any

20        restitution that might be ordered by the

21        sentencing judge, you agree to make

22        restitution in the amount of $9,182,000.

23             THE DEFENDANT:  Yes, your Honor.

24             THE COURT:  Counsel, is my statement of

25        the penalties correct?
```

1          MR. PIERPONT:  Yes, your Honor.

2          THE COURT:  Ms. Peerce?

3          MS. PEERCE:  I believe so, yes, your

4     Honor.

5          THE COURT:  Do you understand these

6     possible consequences of your plea of

7     guilty?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  I'm going to address you

10    regarding the sentencing guidelines.

11         The United States Sentencing Commission

12    has issued guidelines that apply to your

13    case.  Have you and your lawyer talked about

14    how the sentencing guidelines might apply to

15    you?

16         THE DEFENDANT:  Yes, your Honor.

17         THE COURT:  The sentencing guidelines

18    are advisory guidelines under which the

19    court calculates a recommended sentence

20    using the different facts of each case.  The

21    calculation results in a guideline range of

22    possible sentences.  The sentencing judge

23    must consider the guideline range as a

24    recommendation that he sentence you within

25    that range.  The sentencing judge also must

1      consider any possible grounds for departure

2      from the guidelines.  He is permitted to

3      tailor your sentence in light of certain

4      statutory sentencing factors outside the

5      guidelines, but he's required to consider

6      the sentencing guidelines in deciding the

7      sentence he should impose upon you.

8           The guidelines are not mandatory; the

9      guidelines are advisory.

10          The guideline range for your case will

11     be determined after a presentence report is

12     prepared by the United States Probation

13     Office, and you, your lawyer, and the U.S.

14     Attorney's Office have had an opportunity to

15     comment on the presentence report.  Until

16     then no one can be sure what the guideline

17     range will be.  Do you understand?

18          THE DEFENDANT:  Yes, your Honor.

19          THE COURT:  Your lawyer might have

20     advised you of her opinion as to what the

21     guideline range probably will be, but her

22     prediction might be wrong.  Do you

23     understand?

24          THE DEFENDANT:  Yes, your Honor.

25          THE COURT:  If it turns out that the

1        guideline range is higher than you

2        anticipated, the mere fact that you expected

3        to be sentenced under a lower guideline

4        range will not be a basis for withdrawing

5        your guilty plea or overturning your

6        sentence.  Do you understand?

7            THE DEFENDANT:  Yes, your Honor.

8            THE COURT:  Now, once again I'm told

9        that you want to plead guilty to the

10        information which charges you with one count

11        of wire fraud in violation of 18 United

12        States Code Section 1343.  To prove that you

13        are guilty of this charge the Government

14        would have to prove beyond a reasonable

15        doubt certain things we call elements of the

16        offense.

17            I'm going call upon the Government now

18        to list the elements of the offense.

19            MR. PIERPONT:  Yes, your Honor.

20            There are three elements to the offense

21        of wire fraud codified in 18 USC Section

22        1343.

23            The first is that there was a scheme or

24        artifice to defraud or to obtain money or

25        property by materially false and fraudulent

```
 1                pretenses, representations or promises.

 2                     Second, that the Defendant knowingly

 3                and willfully participated in the scheme or

 4                artifice to defraud with knowledge of its

 5                fraudulent nature and with specific intent

 6                to defraud.

 7                     And third, that in execution of the

 8                scheme Defendant used or caused use of the

 9                interstate wires.

10                     THE COURT:  Mr. Garza, I'm about to ask

11                you what you did that shows that you're

12                guilty of this offense to which you're

13                offering to plead guilty.  Before I do that

14                I want to give you another opportunity to

15                speak with your lawyer if you want or need

16                to speak with her.  If you have any

17                questions or concerns that you want to

18                discuss with your counsel before we go

19                ahead, take whatever time you need and talk

20                with her now.

21                     You ready?

22                     THE DEFENDANT:  I'm ready, your Honor.

23                     THE COURT:  All right.  Tell me in your

24                own words what you did that shows you're

25                guilty to the charge of mail fraud.
```

```
1              THE DEFENDANT:  While I was working at

2       GAW Miners --

3              THE COURT:  At what?

4              THE DEFENDANT:  GAW Miners.

5              THE COURT:  Um-hum.  What is GAW

6       Miners?

7              THE DEFENDANT:  The company that this

8       is all about.

9              THE COURT:  Um-hum.

10             THE DEFENDANT:  I made a number of

11      statements that were not true at the time

12      that I made them.  For example --

13             THE COURT:  Did you know they weren't

14      true when you made the statements?

15             THE DEFENDANT:  Yes, ma'am.

16             THE COURT:  All right.  Go ahead.

17             THE DEFENDANT:  For example, I made a

18      statement about our company acquiring

19      another company that was not true.  And in

20      addition to that after the launch of

21      hashlets, a product that the company sold,

22      and up until the beginning of December I

23      made statements about our overall mining

24      capacity that was also not true.  And I also

25      understand that individuals used the
```

1        statements I made as a basis for purchasing

2        from the company in cryptocurrency or U.S.

3        dollars.

4              THE COURT:  And why did you make these

5        false statements?

6              THE DEFENDANT:  To induce further sales

7        for the company.

8              THE COURT:  To make money?

9              THE DEFENDANT:  Yes, ma'am.

10             THE COURT:  So when you made these

11       false statements you knew that they were

12       fraudulent?

13             THE DEFENDANT:  Yes, your Honor.

14             THE COURT:  And your intention was

15       what?

16             THE DEFENDANT:  The intention was to

17       continue business and continue to accept

18       sales from customers.

19             THE COURT:  Knowing that they would

20       rely on these false statements?

21             THE DEFENDANT:  Yes, your Honor.

22             THE COURT:  Now, did you use the wires?

23             MS. PEERCE:  The wires include email

24       and phone, your Honor?

25             THE COURT:  Yes.

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  All right.  And how did you

3      use those?

4          THE DEFENDANT:  I sent emails and made

5      phone calls and things like that.

6          THE COURT:  To further the crime?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  All right.  What I'm going

9      to do now is I'm going to ask the Prosecutor

10      to summarize their evidence against you

11      that you're guilty of this offense, mail

12      (sic) fraud.  I want you to listen very

13      carefully to the prosecutor because when he

14      finishes I'm going to ask you if you agree

15      or disagree with the things he tells me.

16      All right?

17          MS. PEERCE:  Your Honor, if I may, it's

18      wire fraud.

19          THE COURT:  I beg your pardon, wire

20      fraud.  Thank you.

21          MS. PEERCE:  Thank you.

22          THE COURT:  Have a seat.  Go ahead.

23          MR. PIERPONT:  Thank you, your Honor.

24          So we would demonstrate the elements as

25      we had outlined earlier through the use of

1          witnesses, bank records, company records and

2          internal company databases as well.  And

3          what the Government would be able to prove

4          on that beyond a reasonable doubt is that

5          from approximately May 2014 through January

6          2015 the Defendant operated a scheme to

7          defraud victims out of money in connection

8          with the procurement of virtual currency on

9          their behalf.

10               Now, the plea agreement goes into a

11          little bit about what virtual currency is

12          here.  It's in numbered paragraph 2 in the

13          stipulation to the offense conduct, but just

14          briefly it is a digital representation of

15          value that can be traded amongst people and

16          it functions as a medium of exchange.  It is

17          generated through a process called mining.

18          Mining generally involves a computer or

19          hardware solving complex equations and then

20          once those equations are solved a unit of

21          virtual currency, be it bitcoin or something

22          else, will be generated by that computer and

23          awarded to the user.  And that's an

24          important contact for understanding what the

25          Government will be able to approve here.

1          As Mr. Garza had said there were -- GAW

2     Miners was one company that was used in

3     connection with this that he had founded.

4     Others include GAW, ZenMiners, and ZenCloud.

5          Now, what the Defendant did was he had

6     companies that sold miners and sold access

7     to miners, and he also sold the right to a

8     virtual currency that's called paycoin.  He

9     also had a product -- and paycoin is a

10     virtual currency or was intended to be a

11     virtual currency.

12          He also had a product known as

13     hashlets.  Now, a hashlet entitled an

14     investor to a share of the profits that GAW

15     Miners and/or ZenMiners would purportedly

16     earn based on their mining of virtual

17     currency.  So in other words, Mr. Garza had

18     companies that purported to do mining and

19     generate virtual currencies, people would

20     buy into those companies and receive these

21     hashlets and they're supposed to get a

22     sliver of the profit that came from that

23     mining.

24          There were a number of

25     misrepresentations the Defendant made in

1    connection with this in order to generate

2    sales and to generate business.  There are

3    three that are listed here in the plea

4    agreement.  One had to do with making

5    representations regarding a said (phonetic)

6    on a company.  So in other words the

7    Defendant had said that GAW Miners' parent

8    company purchased the controlling stake in

9    another company called ZenMiners that did

10   sort of this virtual mining, virtual

11   currency mining, for 8 million dollars, and

12   that ZenMiners was going to become a

13   subsidiary of GAW Miners, another one of the

14   Defendant's companies.  In fact there was no

15   transaction.  Those were not separate

16   entities, those were all entities controlled

17   by Mr. Garza.

18        The second statement that was made was

19   that hashlets that the Defendant sold, that

20   the hashlets that the company sold engaged

21   in the mining of virtual currency.  In fact

22   the Defendant's company sold more hashlets

23   than was supported by the computer power

24   maintained in their datacenter.  So putting

25   it a little bit differently the Defendant's

1       company sold to customers the right to more

2       virtual currency than the company's

3       computing power could generate.

4           As a result of that the Defendant along

5       with others acting through his companies

6       applied monies that the company took from

7       new hashlet investors and used it to pay

8       older hashlet investors in furtherance of

9       this scheme.

10          The third misrepresentation, your

11      Honor, that is contemplated is that the

12      market value of a single paycoin would not

13      fall below $20 per unit, so in other words

14      the value of a paycoin as available on the

15      open market would always be $20, and that

16      was because purportedly the Defendant's

17      companies had a reserve of 100 million

18      dollars that the company would use to

19      purchase paycoins to drive up its price.  In

20      fact there was no reserve of 100 million

21      dollars and the Defendant was not able to

22      keep the value of paycoin above $20 per

23      paycoin as represented.

24          The reasonably foreseeable loss that

25      we'll be able to prove again through bank

```
 1          records and others that is attributable to

 2          the Defendant is the $9,182,000.  And we

 3          have a number of emails, the one email that

 4          is included in the plea agreement is an

 5          email in which Mr. Garza emailed himself but

 6          the wire I actually believe traveled through

 7          to California using gmail service and back

 8          to him in which he discussed in a note to

 9          himself that GAR Miners' parent company

10          purportedly purchased a controlling stake in

11          ZenMiners for 8 million dollars when as I

12          had noted earlier there was no such

13          transaction.  And again, we have bank

14          records, we have witnesses, we have press

15          releases.  We have representations that Mr.

16          Garza made on a forum.  This is an online --

17          essentially a website where people can post

18          and comment about Mr. Garza's various

19          companies including GAW, GAW Miners and

20          ZenMiners, and bank records as well.

21               THE COURT:  Thank you.

22               Mr. Garza, did you hear everything the

23          prosecutor just told me?

24               THE DEFENDANT:  Yes, your Honor.

25               THE COURT:  Do you agree or disagree
```

```
 1              with the things he said?
 2                   THE DEFENDANT:  I agree, your Honor.
 3                   THE COURT:  You agree with everything
 4              he told me?
 5                   THE DEFENDANT:  Yes, your Honor.
 6                   THE COURT:  I understand you and your
 7              lawyer have prepared a petition to enter a
 8              plea of guilty; is that correct?
 9                   THE DEFENDANT:  Yes, your Honor.
10                   THE COURT:  Have you discussed the
11              petition fully with your lawyer?
12                   THE DEFENDANT:  Yes, your Honor.
13                   THE COURT:  Has the Government seen it?
14                   MR. PIERPONT:  Yes, your Honor.
15                   THE DEFENDANT:  Does it appear to be in
16              order?
17                   MR. PIERPONT:  It does, your Honor.
18              Can I just have one moment?
19                   THE COURT:  Yes, you may.
20                   (Pause.)
21                   MR. PIERPONT:  Yes, your Honor, the
22              Government has reviewed it and finds it in
23              order.
24                   THE COURT:  Defendant and counsel may
25              sign the petition now in open court.
```

1          MS. PEERCE:  Yes, your Honor, and

2     consistent with the special (unintelligible)

3     portions (unintelligible).

4          THE COURT:  All right.  So consistent

5     with our earlier discussion at the bench,

6     give me the --

7          MS. PEERCE:  May I approach, your

8     Honor?

9          THE COURT:  Yes, please.

10         (Pause.)

11         THE COURT:  Consistent with our

12    discussion earlier at the bench the

13    Defendant's response to question 29, which

14    is a list of medications he's taken, it's

15    handwritten that shall be redacted from the

16    public version of the petition.

17         MS. PEERCE:  Thank you, your Honor.

18         THE COURT:  Pending further order of

19    the Court.

20         (Pause.)

21         THE COURT:  Counsel, there are two more

22    pages, one asks for your signature.  If

23    you'd sign that and hand it up.  And then

24    there is another page for my signature.

25         MR. PEERCE:  May I approach, your

1      Honor?

2             THE COURT:  Yes, please.

3             MS. PEERCE:  I just signed mine.

4             THE COURT:  Thank you.

5             (Pause.)

6             THE COURT:  I signed the petition as

7      well and it may be filed.

8             Mr. Garza, based on everything I've

9      seen and heard it appears to me that you

10     want to plead guilty because you believe you

11     are guilty and that you choose to plead

12     guilty freely and voluntarily.  Is that

13     correct?

14            THE DEFENDANT:  Yes, your Honor.

15            THE COURT:  I'm about to take your

16     guilty plea.  I'll have the charge read to

17     you in its entirety unless you waive or give

18     up the reading.  Do you waive the reading?

19            THE DEFENDANT:  Yes, your Honor.

20            THE COURT:  All right.

21            Mr. Clerk, put the Defendant to plea.

22            COURTROOM DEPUTY:  Yes, your Honor.

23            In the case of the United States of

24     America vs. Homero Joshua Garza, Criminal

25     Number 3:17-CR-158 RNC, as to Count 1 of the

```
1           information charging violation of Title 18
2           United States Code Section 1343, how do you
3           wish to plead?
4                THE DEFENDANT:  Guilty.
5                COURTROOM DEPUTY:  Your Honor,
6           Defendant pleads guilty to Count 1 of the
7           information.
8                THE COURT:  On the basis of the
9           Defendant's petition to enter a plea of
10          guilty, the Defendant's answers to my
11          questions in open court today, the remarks
12          of defense counsel and the Assistant United
13          States Attorney, I find that the Defendant
14          is fully competent and capable of entering
15          an informed plea; that the Defendant
16          understands the nature of the charge against
17          him; that he knows his right to a jury trial
18          and his other trial-related rights.  He
19          knows the maximum possible sentence and the
20          other possible consequences of his plea of
21          guilty.
22               I further find that the Defendant's
23          plea of guilty is a knowing and voluntary
24          plea supported by an adequate factual basis
25          as to each of the essential elements of the
```

1    offence.

2         Mr. Garza, we have a United States

3    Probation Officer with us here today.  She

4    will interview you sometime after this

5    hearing.  Either this officer or one of her

6    colleagues later will prepare a presentence

7    report which will be submitted to the Court

8    to assist in determining your sentence.  You

9    should remember that the Probation Officers

10   work for the Court, not for the prosecution.

11   Your cooperation with the United States

12   Probation Officer generally will be

13   beneficial to you.  However, it's important

14   that you carefully discuss with your lawyer

15   what you say to the Probation Office because

16   the presentence report is very important in

17   determining your sentence.  Do you

18   understand?

19        THE DEFENDANT:  Yes, your Honor.

20        THE COURT:  You may sit down, sir.

21        Mr. Garza, you have a right to object

22   to items contained in or omitted from the

23   presentence report.  Your lawyer must read

24   and review the presentence report with you

25   prior to the date set for submitting

1     objections to the report.  After receiving

2     counsels' objections the Probation Officer

3     will conduct any further investigation and

4     make any revisions to the presentence report

5     that might be necessary.  The revised

6     presentence report will then be disclosed to

7     the Court and to counsel.  Your lawyer must

8     read and review the presentence with you

9     prior your sentencing hearing.

10          The presentence report must be

11    disclosed to the Defendant, to counsel for

12    the Defendant, and to the Government on or

13    before August 31st, 2017.  Counsel shall

14    communicate to the Probation Officer any

15    objections to the presentence report on or

16    before September 5th, 2017.  The amended

17    presentence report must be disclosed to

18    counsel and to the Court on or before

19    September 24th, 2017.  Any sentencing

20    memoranda shall be submitted to the Court

21    not later than 10 days before sentencing.

22    Counsel's attention is directed to Rule 32

23    of the District of Connecticut's Local Rules

24    of Criminal Procedure to guide them in their

25    careful preparation for sentencing.

1          Sentencing is scheduled for October 12th,

2     2017 at 10:00 a.m. at the United States

3     District Court, North Courtroom, 450 Main

4     Street in Hartford.

5          Counsel, if for some reason this date

6     isn't consistent with your schedule just

7     submit a request to Judge Chatigny.  This

8     date has been given to me by his chambers.

9          All right.  Let's take up the question

10    of detention or release.  Is there an

11    application for release pending sentencing

12    under 18 USC Section 3143?

13         MS. PEERCE:  Your Honor, we discussed

14    this with the Government and with your

15    Honor's consent it is my request Mr. Garza

16    be released on his own recognizance with

17    travel in the continental United States.  He

18    does not live in Connecticut nor does he

19    live in New England, and so it is my

20    understanding that this is consistent with

21    the Government's agreement, but of course

22    it's your Honor's ultimate decision.

23         MR. PIERPONT:  That's right, your

24    Honor, the Government is not seeking

25    detention at this point.  We've had a

1          lengthy history of interacting with Mr.

2          Garza and his counsel throughout this

3          process.  The Government does not believe at

4          this point that he poses a risk of flight or

5          a danger to the community.

6              I would add as well that, you know,

7          along those lines we don't believe it's

8          necessary for there to be bond or anything

9          along those lines.  We would just ask for

10         the standard conditions with travel being

11         restricted to the continental United States,

12         surrender passport, no use of illegal drugs

13         and no violating any laws or crimes.  Thank

14         you.

15             THE COURT:  Does the Government have

16         any information that the Defendant is likely

17         to flee or pose a danger to himself or

18         anybody in the community?

19             MR. PIERPONT:  Well, I think, your

20         Honor, with respect to the likelihood to

21         flee, Mr. Garza probably would have if that

22         was his intention by this point.  This has

23         been a lengthy investigation about which Mr.

24         Garza has been aware and he has as I said

25         through his lawyer we've been in touch and

1          he's here today.  So with respect to flee,

2          we don't believe that there's any likelihood

3          of flight.

4               As to danger to the community, we don't

5          have any information candidly one way or

6          another.  I don't believe that he has a -- I

7          don't believe that he poses any danger to

8          the community at this point.  He has clearly

9          admitted what he's done, understands that it

10         is wrong.  The Government sees it as a low

11         likelihood that he would repeat in any way

12         what it is that he has done at this point.

13              THE COURT:  All right.

14              Counsel, do you have anything to add?

15              MS. PEERCE:  I do not, your Honor.  If

16         there's a surrender of passport, can Mr.

17         Garza surrender it to me?

18              THE COURT:  Yes.

19              MS. PEERCE:  Thank you.

20              THE COURT:  All right.  I'll set the

21         following conditions.

22              With agreement of the parties,

23         specifically consent to the Government, I'll

24         set a personal recognizance bond and I'll

25         set the following conditions of release.

1          The Defendant must not violate federal,

2     state or local law while on release.

3          He must cooperate in the collection of

4     a DNA sample if it's authorized by statute.

5          The Defendant must advise the Court and

6     the United States Probation Officer in

7     writing before making any change of

8     residence or telephone number.

9          He must appear in court as required and

10    must surrender as directed to serve any

11    sentence the Court might impose.

12         The Defendant must sign his appearance

13    bond.

14         The Defendant must surrender his

15    passport -- do you have the passport?

16         MS. PEERCE:  I believe Mr. Garza has it

17    out in the car.

18         THE DEFENDANT:  All right.

19         MS. PEERCE:  But if not, your Honor, he

20    will send it right to me.

21         THE COURT:  Is it in the car, Mr.

22    Garza?

23         THE DEFENDANT:  Your Honor, I didn't

24    check before I -- I asked my wife to but I

25    just didn't check before I left.  So I

1       believe that it is.

2              THE COURT:  All right.  Well, if the

3       passport is in the car I want Mr. Garza to

4       surrender the passport to his counsel

5       immediately.  If the passport is not in the

6       car would it be at home?

7              MS. PEERCE:  That's my understanding

8       and I would reach right out to Mr. Garza's

9       wife and ask her to put it in overnight mail

10      to me.

11             THE COURT:  Thank you.  That's exactly

12      what I would order.

13             The Defendant must not obtain any other

14      passport or international travel document.

15      His travel is restricted to the continental

16      United States.

17             Do you have any guns in the house?

18             THE DEFENDANT:  No, your Honor.

19             THE COURT:  He must not possess a

20      firearm, destructive device or other weapon.

21             No excessive use of alcohol; no

22      possession or use of an unlawful controlled

23      substance unless prescribed by a licensed

24      medical practitioner.

25             And the Defendant must report as soon

```
1              as possible to the Pretrial Services Office

2              or supervising officer every contact with

3              law enforcement personnel, including

4              arrests, questioning or traffic stops.

5                   Have I overlooked anything, Counsel?

6                   MR. PIERPONT:  I don't think so, your

7              Honor.  I'd just clarify maybe, your Honor,

8              maybe you asked you this, just to ensure

9              that not just him but nobody in his

10             residence has a weapon of any sort.

11                  THE COURT:  Thank you.

12                  Anybody have one?

13                  THE DEFENDANT:  No, your Honor.

14                  THE COURT:  No guns in the house.

15                  THE DEFENDANT:  No, your Honor.

16                  THE COURT:  All right.  You're

17             convicted now.  You may not possess a

18             weapon.  So there can be no weapon in the

19             house.  You understand?

20                  THE DEFENDANT:  Yes, your Honor.

21                  THE COURT:  All right.

22                  MS. PEERCE:  Your Honor, the law

23             enforcement contacts are exclusive of any

24             law enforcement -- Agent Munster is right

25             here, so notifying of any contact with law
```

1          enforcement I assuming outside the context

2          of this case.

3               THE COURT:  If he has any contact with

4          any law enforcement officer he must disclose

5          that to the Probation Office.

6               MS. PEERCE:  Very well.

7               MR. PIERPONT:  Understood, your Honor.

8               Your Honor, if I may, if we're at the

9          conclusion of the proceedings I just want to

10         make a little bit of a record about victims

11         in this case.  We have been in touch with

12         victims.  We notified more than 200 of them

13         at this point.  We continue to track down

14         victims and as we track them down we will

15         continue to notify them.  That included a

16         conference call that we had with those 200-

17         plus victims where we answered questions

18         that they had submitted.

19              I would just point to the extent there

20         are victims here or that there may be people

21         who can get information to victims that

22         according to the Crime Victim Rights Act

23         they absolutely have the right to be heard

24         at sentencing.  The Government would

25         encourage them to be heard at sentencing and

1    they're welcome to participate in the

2    proceedings.

3        I'd add as well to the extent that

4    victims or other people are making threats

5    against Mr. Garza or his family that they

6    shouldn't.  And I think I'll just leave it

7    there.  Thank you, your Honor.

8        THE COURT:  All right.  I have signed

9    all the appropriate paperwork.  Is there

10   anything else we should do, Counsel?

11       MR. PEERCE:  Your Honor, I think Mr.

12   Garza would just like to say one thing.

13       THE DEFENDANT:  Yes, your Honor.  I

14   just wanted to express my biggest apologies

15   to the victims and the actions that I caused

16   the victims as well as the U.S. Government.

17       MR. PIERPONT:  Nothing further from the

18   Government, your Honor.

19       THE COURT:  All right.  Thank you,

20   Counsel.  We're in recess.

21       MR. PIERPONT:  Thank you.

22       (Proceedings adjourned at 12:11 p.m.)

23

24

25

```
 1                          CERTIFICATE

 2


 3              I hereby certify that the foregoing 60

 4   pages are a complete and accurate transcription to the

 5   best of my ability of the electronic recording of the

 6   Change of Plea Hearing in re:  UNITED STATES OF

 7   AMERICA vs. HOMERO JOSHUA GARZA, Criminal No. 3:17-CR-

 8   00158 (RNC) held before The Hon. Donna F. Martinez,

 9   United States Magistrate Judge, in Hartford,

10   Connecticut, on July 20, 2017.

11


12   _____

13   Suzanne Benoit, Transcriber          Date: 8/19/17

14

15

16

17

18

19

20

21

22

23

24

25
```